IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br>NELSON VARGAS CORDERO<br>MARY J. RODRIGUEZ QUIÑONES<br><br>Debtors<br><br>IN RE:<br>NELSON VARGAS CORDERO<br>MARY J. RODRIGUEZ QUIÑONES<br><br>Plaintiffs<br><br>vs.<br><br>COOPERATIVA DE AHORRO Y CREDITO NUESTRA SEÑORA DE LA CANDELARIA; X, Y, and/or Z INSURANCE CO.; JOHN DOE AND JANE ROE<br><br>Defendants<br><br>JOSE CARRION MORALES<br>CHAPTER 13 TRUSTEE/PARTY IN INTEREST<br>CASE 11-02484-BKT | Case No. 98-10612 (ESL)<br><br>CHAPTER 13<br><br><br><br><br><br><br><br><br><br>Adv. No. 11-00151- ESL<br><br>VIOLATION OF DISCHARGE INJUCTIVE RELIEF / CONTEMPT / DAMAGES |

MOTION FOR RECONSIDERATION

TO HONORABLE COURT:

Come now, Cooperativa de Ahorro y Crédito La Candelaria (hereinafter Candel Coop), that respectfully states, prays, and requests as follows:

In the case at bar the Plaintiffs/Debtors filed a motion requesting sanctions against the Defendant Candel Coop as a result of which the Court entered an order (Docket 38) granting in part and denying in part the Motion of the Plaintiffs on April 23, 2012. For the reasons set forth

herein we request from the Court to take notice as to why we were not able to respond to Plaintiffs´ motion and to reconsider its decision.

First of all we want to apologize to the Court and to Plaintiffs´ counsel for the limited communication on our part. The lack of communication has been due to the stressful and difficult circumstances under which we have had to work during the last several months. This has been so far a very difficult year for the undersigned. As the Court already knows as set forth in a prior motion, the undersigned, Roberto Maldonado, is a diabetes patient, and throughout the last several months his health condition has deteriorated. See medical certification attached for the reference of the Court. As of the date of this motion, even though the condition is under control, there has not been an improvement in some of the symptoms related to the diabetes like blurred vision, skin ulcers in the arms, legs, and scalp, hyperactive kidney activity, difficulty sleeping as a result of the constant urge to urinate, leg cramps, joint pains, high blood pressure, and tiredness. The medical complications have severely limited his capacity to work and in fact as instructed by one of the physicians, part of his work has been referred to other attorneys, and in other instances, other colleagues have had to assist him in other cases. He has had to reduce his capacity to work also as part of the treatments he is ongoing and due to the risks that he confronts due to his condition of facing coronary or kidney disease, considering the fact that the heart and the kidneys are two of the organs that are in greater risk with diabetes patients.

In addition to the medical limitations that have limited attorney Maldonado´s capacity to work, the mother of attorney Navarro, who is a cancer patient survival, began in March confronting medical complications related to her condition that will require surgery on short notice during this month of May. She is over 80 years old, just as her husband, whose health is also frail, and they only have attorney Navarro to assist them. Since they both live in Canóvanas,

the need to help them and to take care of their medical and laboratory appointments also has limited the capacity of attorney Navarro to work in this litigation. Thirdly, our secretary was scheduled to go on maternity leave on May 15, 2012. Due to medical reasons related to her pregnancy she was hospitalized during the week of April, 15, 2012, and in fact had her baby born prematurely, as a result of which we have not been able to have the services of a secretary and will not be able to have one for an extended period of time, as a result of which our work has also been affected and delayed.

As the Court may see, the problems confronted so far during the year to be able to attend diligently all of our professional commitments have been unexpected and very burdensome, making it impossible for the undersigned to comply with the Court order as far as submitting the proposed findings of fact and conclusions of law by the deadline set forth by the Court and to be ready for the May 8, 2012 trial.

Accordingly, it is requested from the Court to grant an extension of time to the undersigned to submit the proposed findings by May, 31, 2012 and to reschedule the trial for the month of June, 2012. Moreover, given our review of the facts and the applicable case law, the issue of liability could perhaps be adjudicated by the Court summarily, considering the brief submitted by the Plaintiffs and the brief that the Defendant will be submitting. A denial of this request considering the circumstances under which the undersigned have been working will impose a very heavy burden on the Defendant who is at no fault. Moreover, not granting this request may also have the effect of placing the Defendant in a position close to a default.

Given the effect of a default on a party as a sanction, we bring to the attention of the Court the case law in that respect, given the relation of that case law to the circumstances of this case and the position in which the Defendant and its attorneys are. A dismissal under Rule 41 is a

matter of judicial discretion. The discretion of courts to sanction with a dismissal or a default a party, has been acknowledged by the Supreme Court of the United States. See Link v. Wabash R.R. Co. 370 U.S. 626, 630-31; 82 S. Ct. 1386, 1388-89(1962). However, such discretion must be exercised with care given the impact of the dismissal on the party. It is such a harsh sanction that it should be reserved for extreme situations demonstrating a clear record of delay or contumacious conduct by the party. See Robson v. Hallenbeck 81 F. 3d 1 (C.A. 1, 1996). Given its severity, it should also be exercised sparingly, (see Pardee v. Stock 712 F. 2d 1290 (C.A. 8, 1983)) and tempered by a careful exercise of judicial discretion. See Durgin v. Graham 372 F. 2d 130 (C.A. 5, 1967).

Several factors have been traditionally considered by District Courts and Courts of Appeals in order to allow such a sanction. Among the factors considered there are the following:

(a) The extent of the party's personal responsibility for the conduct. See Spain v. Gallegos 26 F. 3d 439, 455, (C.A. 3, 1994);

(b) whether there is a clear record of delay; see Estate of Solís Rivera 993 F. 3d. 1, 2-3 (C.A. 1, 1993) and In re Eisen 31 F. 3d. 1447, 1451 (C.A. 9, 1994);

(c) the risk of prejudice to the party. See In re Eisen, supra at 1452-53 and Spain, supra at 455; and Hobson v. Wilson 737 F. 2d. 1 (D.C.C.A, 1984); and Richman v. General Motors Corp. 437 F.2d. 196 (C.A. , 1971);

(d) whether the conduct was willful or in bad faith; see Abdullah v. ACandS Inc. 30 F. 3d. 264, 270 (C.A. 1, 1994) and Estate Solís, supra at 2;

(e) the policy that favors disposition of cases on their merits rather than procedural defaults. See In re Eisen, supra at 1451; see also Conley v. Gibson 355 U.S. 41, 48; 78 S. Ct. 99,

103; and 2 L. Ed. 2d. 80 (1957);

(f) whether the Court could impose an effective sanction that is less drastic than a dismissal, see Estate Solís, supra, at 2; and whether those less severe sanctions are deemed futile before the dismissal is undertaken, see McCloud River P.R. Co. v. Sabine River Food Prods. Inc. 735 F. 2d. 879 (C.A. 5, 1995) and Roland v. Salem Contract Comics Inc. 109 F.R.D. 424 (D. C. Ind. 1986), Schenk v. Bear Stearns & Co. 583 F. 2d. 58 (C.A. 2, 1978) and Guyer v. Beard 907 F. 2d. 1424 (C.A. 3, 1990);

(g) the probable merits of the suit; see Estate Solís, supra, at 2; and

(h) whether the Court warned the party of the dismissal as a sanction, see Johnson v. Kamminga 34 F. 3d. 466, at 468 (C.A. 7, 1994) and Oliva v. Sullivan 958 F. 2d. 272 (C.A. 9, 1992).

As we will show, most of these factors, if not all, favor Defendant's position in the request for the reconsideration. Now follows an application of each factor to the record in this case.

(i) The extent of Defendant's responsibility:

The Defendant has not been responsible at all in the case at bar for what has happened in this case or for what happened with its attorney. The undersigned has been confronting extremely serious health set backs that impeded the timely compliance with the deadlines and prosecution of the defenses of its client.

(ii) Whether there is a clear record of delay:

Even though there have been delays in this case that can be attributed to the undersigned, they have been caused due to the health problems brought to the attention of the Court.

(iii) The risk of prejudice to Plaintiff:

5

Other than the delay the Plaintiffs in this case have not shown any prejudice. Thus, to a great extent no harm has been caused to the Plaintiff in that respect.

(iv) Whether Defendant's conduct was willful or in bad faith:

The record clearly shows that there is no willful conduct or bad faith on the part of the Defendant or the undersigned. Accordingly, this factor is also met in the case at bar.

(v) The policy that favors the disposition of the cases on their merits:

This policy is also applicable to the case at bar. We must also reiterate that the Plaintiffs has not shown any prejudice if the petition of the Defendant is granted and the impact of the sanction on the Defendant could be devastating, considering the fact that Defendant may need to invest time, efforts, and resources in pursuing an appeal of the Court's decision. Accordingly, this factor is also met in the case at bar.

(vi) Whether the court could impose less severe sanctions:

The record in the case at bar clearly shows that no lesser sanctions have been imposed by the Court. We are aware that the Court has denied the opportunity of taking the deposition of the Plaintiffs, which the undersigned would be willing to accept. Accordingly, this factor is also met in the case at bar.

(vii) The probable merits of the suit:

This factor cannot be assessed because the arguments and evidence regarding the allegations of the complaint and the response have not been tried before the Court.

The Federal Rules of Civil Procedure must be interpreted in such way that justice is served, and in the spirit of Rule 1 of the Federal Rules of Civil Procedure and such objective there is an interest in safeguarding the policy of the law to adjudicate controversies on the merits. See Conley v. Gibson supra. See also Wright & Miller, Federal Practice and Procedure §1029

(1973). Accordingly, we respectfully request from the Court to reconsider its order, granting the extension of time to submit the proposed findings of fact and conclusions of law and rescheduling the trial for the month of June 2012.

WHEREFORE, it is respectfully requested from the Court to grant this motion.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 1st day of May, 2012.

I hereby certify that on this same date a true and exact copy of this motion was sent to Edwin Matos Maldonado and Felix Zeno Gloró through the Electronic Case Management System just as to: Nancy Pujals, Esq.- nancy.pujals@usdoj.gov; Monsita Lecaroz, Esq. - monsita.lecaroz@usdoj.gov.

| | |
|---|---|
| S/CYNTHIA NAVARRO PAGAN | S/ROBERTO MALDONADO NIEVES |
| CYNTHIA NAVARRO PAGAN | ROBERTO MALDONADO NIEVES |
| U.S. Id. 203602 | U.S. Id. 202209 |
| C/7 N. E. #344, Suite 2-B | C/7 N. E. #344, Suite 1-A |
| Esq. Franklin D. Roosevelt | Esq. Franklin D. Roosevelt |
| San Juan, Puerto Rico 00921 | San Juan, Puerto Rico 00921 |
| Tel.: (787) 792-2955 | Tel. (787) 782-3221 |

mpd   C:\Documents and Settings\Mayra\My Documents\My Files\La-Candelaria\Vargas\Recon.wpd

# JULIO ALBINO VAZQUEZ M.D.
P.O. Box 360113
San Juan, Puerto Rico 00936-0113

Mr. Roberto Maldonado Nieves has been my patient for several years. He is 51 years old and in December 2004 he was diagnosed with diabetes type II after a sudden high blood sugar level event discovered as a result of several medical complications he suffered (high blood sugar level, high kidney activity and blurred vision, among other conditions identified at that time). The diabetic condition was controlled after several weeks with medication and treatment, and thereafter has been treated by me as a chronic condition given his diagnosis and family medical history. In the years 2006 and 2007 he suffered other diabetic complications that were controlled with medication and diet and thereafter his condition was kept under control over an extensive period of time until the fall of 2009. During that period of time his condition has been monitored by Dr. Iván Cerezo de la Rosa and by me.

Between the months of August 2009 and February 2010 he confronted severe medical complications with his diabetes including neuropathy, blurred vision, skin ulcers in the arms, legs, and scalp, high cholesterol, hyperactive kidney activity, difficulty sleeping as a result of the constant urge to urinate, leg cramps, lack of concentration, dizziness, joint pains, high blood pressure, and tiredness. By the month of February 2010, he reached control in his conditions. However, between the months of October 2010 and February 2011, after a sudden loss in weight and high blood sugar levels, he began suffering the same symptoms confronted in the period from August 2009 and February 2010, and very high blood pressure and hyperactive kidney activity. Considering the relationship between diabetes and coronary disease, and the blood pressure levels, in addition to the medications he was prescribed, he was ordered to follow a strict diet and rest and to refrain from any stressful activities and work during that period of time. By late February his condition was back under control, but after mid March he was evaluated again as a result of high blood pressure, blurred vision, chest pains, tiredness, and extreme hyperactive kidney activity, symptoms that have been ongoing until the date of this certificate. Due to the risk of coronary disease and kidney disease, he was ordered to follow again a strict diet and rest and to refrain from any stressful activities and to follow treatment with medications. During the month of May his condition improved but during the month of June he suffered a set back in his condition that included a fainting event as a result of which he fell and suffered trauma in his back, hips, left arm, and wrist. Given the upswings in his sugar levels, high blood pressure and recent fainting event and the risk of coronary and kidney disease he was ordered begining June 23 until July 1, 2011 to rest, to refrain from stressful activities and to proceed with a series of tests and dose changes in his medications.

During the month of July and the subsequent weeks his condition improved and the sugar levels began lowering until the months of October and November, 2011 in which they began averaging over 300 mg/dl in combination to high cholesterol levels (280 mg/dl) and triglycerides (351 mg/dl), which considering sustained high blood pressure levels and fatigue placed him at risk of coronary complications. Moreover, he had high kidney activity confirmed by ketones in the urinalysis and his eyesight began confronting limitations due to a tear in the epithelial membrane of his left eye and the inflammation of the ocular lens caused by the high blood sugar levels. Given

these latest complications he was ordered to rest and to refrain from stressful activities for thirty days, to be subject to a strict diet, and to proceed with a series of tests and dose changes in his medications and medications for high blood pressure and for high cholesterol.

During the month of December his condition improved, but during the beginning of January 2012 he had a relapse in his high blood sugar levels and in his high blood pressure, and other medical complications related to his diabetic condition have arisen including high kidney activity, fatigue, blurred vision, and neuropathy. Given his continued risk of further complications and coronary and kidney disease, he was ordered to continue rest for thirty days, to limit stressful activities, and to follow a strict diet and continue his medications while his blood sugar levels and high blood pressure were monitored several times during the day while his condition improves.

Throughout the months of January and February his condition did not improve. He has maintained high blood suger levels, high blood pressure, blurred vision, chest and lower back pains, fatigue, skin ulcers in the legs, neuropathy, and extremely high kidney activity, that has also affected his sleep, averaging more than twenty visits to the bathroom per day. These continued symptoms have caused a severe emotional strain that in conjunction with his stressful professional practice undermine the possibility of an improvement in his condition, and also put his health in further risk.

As a result of his lack of control of his sugar levels and high blood pressure and the appearance of chest pains as part of his symptoms, he is being referred to a cardiologist for evaluation and he is also being advised to substantially reduce his work load and/or to seek assistance from other attorneys or to refer his work to other attorneys while he takes care of his health. Not doing so will place him at risk of kidney and coronary disease, further deteriorating his quality of life and putting him at risk of a heart attack. Considering the fact that the kidneys and the heart are two of the organs that can be mostly affected by diabetes, and the continuous lack of control of the blood sugar levels, he is also being evaluated to change his medications to include the use of insulin in addition to other medicines to control the diabetes.

In San Juan, Puerto Rico this 12th day of March, 2012.

Julio Albino Vázquez M.D.
License # 10465
Tel. 787-510-4054